IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL A. SUSSMANN,<br><br>*Defendant.*<br><br>RODNEY JOFFE,<br><br>*Proposed Intervenor.* | Case No. 1:21-cr-00582 (CRC) |

### RODNEY JOFFE'S MOTION TO INTERVENE AND
### TO EXPUNGE REFERENCES TO TECH EXECUTIVE-1 BASED
### ON CONSTITUTIONAL VIOLATIONS AND SUPPORTING MEMORANDUM

Rodney Joffe, widely identified in media reports as "Tech Executive-1" in the Indictment in the above-captioned matter, by and through his undersigned counsel, hereby moves for an order (1) permitting him to intervene in this matter for the limited purpose of defending his Constitutional rights; (2) expunging all references to Tech Executive-1 from the Court's file; (3) prohibiting the parties from making any further allegations of wrongdoing by Tech Executive-1, including in any report regarding the grand jury's investigation; (4) sealing this motion and the attached exhibits; and (5) granting him such other relief as may be necessary and appropriate to

remedy the Office of Special Counsel's ("OSC") intentional violation of his Constitutional rights.[1]

## BACKGROUND

### A. The OSC's Initial Allegations of Wrongdoing by Mr. Joffe and His Response

On September 16, 2021, a grand jury returned the Indictment in this matter (cited herein as "Indictment ¶ __, at __"), charging a single defendant with a single count of lying to a federal agent, in violation of 18 U.S.C. § 1001. Notwithstanding this fact, the Indictment contains a rambling, 27-page description of alleged wrongful conduct involving numerous individuals and companies, identified by pseudonyms, including "Tech Executive-1."

The Indictment describes Tech Executive-1 as "an executive of a particular Internet company . . . which offers various Internet-related services and products, including Domain Name System ('DNS') resolution services, to its customers." (Indictment ¶ 23, at 10). It further alleges that Tech Executive-1 "maintained direct or indirect access to, and the ability to provide others access to, large amounts of internet and cybersecurity data, including DNS data." (*Id.* ¶ 13, at 5). The Indictment then depicts Tech Executive-1 as a politically-motivated actor who, in coordination with others, including defendant Sussmann and the Clinton Campaign, engaged in a series of wrongful acts aimed at discrediting then-Presidential candidate Donald J. Trump. Among other things, the Indictment alleges that Tech Executive-1:

- "exploited his access to non-public data at multiple Internet companies to conduct opposition research concerning Trump" (Indictment ¶ 6, at 3);

- "directed and caused employees of two companies in which he had an ownership interest . . . to search and analyze their holdings of public and non-public internet data for derogatory information on Trump" (*Id.* ¶ 22a, at 8);

---

[1] Mr. Joffe recognizes the unusual nature of this motion and the requested relief. As set forth below, however, there is ample authority for this Court to entertain this motion in order to right the wrong that has been perpetrated upon Mr. Joffe and his family as a direct result of the overzealous and irresponsible actions of the OSC.

2

- with Sussmann and his law firm, "coordinated, and [was] continuing to coordinate, with representatives and agents of the Clinton Campaign with regard to the data and written materials that **SUSSMANN** gave to the FBI and media" (*Id.* ¶ 6, at 3 (emphasis in original));

- helped draft a "white paper" summarizing the researchers' work for submission to the FBI and asked the researchers "whether the paper's allegations would be 'plausible' to 'security experts,' even if the allegations were not demonstrably true . . . ." (*Id.* ¶ 24e, at 15);

- claimed to have been offered a position in the Government in the event Hillary Clinton won the Presidency (*Id.* ¶ 15, at 5);

In the days following the return of the Indictment, there was intense speculation in the media about the identity of Tech Executive-1, although people who had been closely following the OSC's investigation immediately identified Joffe based on the Indictment's specific description of him.[2] At the same time, Mr. Joffe and members of his family then became targets of what has become an ongoing stream of threatening communications, including via Twitter, some of which have identified and included pictures of members of his family who have nothing to do with the events the OSC is investigating. *See* @RyanM58699717, Twitter (Sept. 20, 2021, https://twitter.com/ryanm58699717/status/1440153259012804608?s=21 (a screenshot is attached as **Exhibit A**). Within days, the mainstream media had identified Mr. Joffe as Tech Executive-1. With no forum in which he could respond to the Indictment's false and misleading allegations, Mr. Joffe was forced to make a short statement to the media through undersigned counsel

---

[2] *See* @FOOLNELSON, Twitter (Sept. 16, 2021),
https://twitter.com.FOOL_NELSON/status/1438666807360081921 ("If you are following along, Tech Exec 1 looking pretty solved . . . . Joffe is a good candidate given he donated to a Republican while living in Arizona and his company @Neustar has been represented by Perkins Coie"); Mark Wauck, *What's In The Sussmann Indictment? Plenty*, Meaning in History (Sept. 16, 2021), https://meaninginhistory.substack.com/p/whats-in-the-sussmann-indictment?utm_source=url (stating that "Sussmann was acting on behalf of . . . Rodney Joffe [Tech Executive-1] of Neustar [Internet Company-1]"); Thomas Lifson, *Durham's indictment of Clinton campaign lawyer Michael Sussmann offers hope that bigger fish may be reeled in*, American Thinker (Sept. 17, 2021), https://www.americanthinker.com/blog/2021/09/durhams_indictment_of_clinton_campaign_lawyer_michael_sussman_offers_hope_that_bigger_fish_may_be_reeled_in.html.

denying that he had engaged in any wrongdoing, hoping it would diffuse the increasing threats of violence.[3] Unfortunately, the statement did not accomplish that goal.

On October 27, 2021, after weeks of threats against Mr. Joffe and his family, undersigned counsel sent a detailed letter to Special Counsel John Durham, copying Attorney General Merrick Garland. In the letter, we objected to the gratuitous inclusion of "Tech Executive-1" in the Indictment, noting that the extensive allegations against Mr. Joffe had "caused an onslaught of verbal attacks and threats against [Mr. Joffe] . . . in print and broadcast media, online, and on Twitter." We further stated that "it strains credulity to think that [OSC] did not anticipate that your false and misleading description of my client's actions and role in the events . . . would stoke the false narrative that others irresponsibly have advanced regarding the events, and embolden Twitter trolls and other Internet cowards." Finally, we disputed the Indictment's false and misleading characterization of Mr. Joffe's actions, especially insofar as it ignored exculpatory evidence in the possession of the OSC, and provided numerous examples of instances where the Indictment included "cherry-picked" portions of emails or events that misrepresented the overall context.

---

[3] *See* Brittany Bernstein, *Durham Issues New Subpoenas in Probe of FBI Russia Investigation, Targets Clinton Campaign Law Firm*, National Review (Sept. 30, 2021, 1:49 PM), https://www.nationalreview.com/news/durham-issues-new-subpoenas-including-to-clinton-campaign-law-firm/; Evan Perez and Katelyn Polantz, *Durham issues fresh round of subpoenas in his continuing probe of FBI investigation into Trump, Russia*, CNN Politics (Sept. 30, 2021, 7:41 PM), https://www.cnn.com/2021/09/30/politics/durham-subpoenas-probe-russia-fbi-sussman/index.html; Samuel Chamberlain, *'Tech Exec-1' revealed amid Durham subpoena of Clinton campaign law firm*, NY Post (Sept. 30, 2021, 8:41 PM), https://nypost.com/2021/09/30/tech-exec-1-revealed-amid-durham-subpoena-of-clinton-law-firm/; Jerry Dunleavy, *Identity of 'Tech Executive' in Durham indictment over Alfa Bank claims revealed*, Washington Examiner (Sept. 30, 2021, 9:45 PM), https://www.washingtonexaminer.com/news/identity-of-tech-executive-in-durham-indictment-revealed; Bruce Golding, *Who is Rodney Joffe, aka 'Tech Executive-1' in Durham indictment?*, NY Post (Sept. 30, 2021, 9:48 PM), https://nypost.com/2021/09/30/who-is-rodney-joffe-tech-executive-1-in-durham-indictment/; Charlie Savage and Adam Goldman, *Trump Server Mystery Produces Fresh Conflict*, NY Times (Sept. 30, 2021), https://www.nytimes.com/2021/10/01/us/politics/trump-alfa-bank-indictment.html;.

With regard to the substance of the Indictment's allegations against Mr. Joffe, we noted that evidence in the possession of the OSC established, among other things, the following facts that the OSC had seemingly ignored:

- **Mr. Joffe did not instigate the investigation of the alleged Trump Organization/Alfa Bank/Spectrum Health connection.** Instead, cybersecurity researchers detected what they believed was anomalous DNS activity involving a server connected to the Trump Organization, two servers connected to Alfa Bank, and a server connected to Spectrum Health, an organization connected to the DeVos family. In the aftermath of the hack of the White House[4] and the DNC[5], those researchers were analyzing public DNS data to identify other potential threats to the upcoming election. After discovering DNS data suggesting a Trump Organization/Alfa Bank/Spectrum Health connection, the researchers contacted Mr. Joffe and requested his assistance in accessing additional DNS data in order to assess the threat presented by the connection.

- **Mr. Joffe did not improperly access or "exploit" private data.** On the contrary, the data in question was public data that was owned by private companies that, on occasion, would grant licenses to others to access the data for various purposes, including cybersecurity research. Moreover, Mr. Joffe was and is fully authorized to provide others with such access without running afoul of any statute, regulation or contractual obligation to the United States Government or any private party.

- **Mr. Joffe did not "task" researchers who were working on a pending federal contract and thereby misappropriate Government resources.** Instead, the researchers asked him to provide additional data to support their work and Mr. Joffe lawfully provided the data. As the work of the researchers progressed, Mr. Joffe, as a senior scientist, developed and discussed a working hypothesis with them and provided periodic feedback, including by questioning the hypothesis and challenging the work of the researchers. This was not "tasking" or "directing," as the Indictment alleges; it was scientific collaboration. Moreover, to the best of Mr. Joffe's knowledge, none of the researchers then were working for the U.S. Government or charging their time against any Government contract. Even if they were, however, Mr. Joffe would have no way of knowing, as they were not employed by and did not report to him. Finally, the Government did not own or have exclusive rights to the data that was provided.

- **Mr. Joffe did not perform any of the research or pressure the researchers to deliver a "narrative", support an "inference", or to reach any conclusion.** Instead, the

---

[4] Evan Perez and Shimon Prokupecz, *How the U.S. thinks Russians hacked the White House*, CNN Politics (Apr. 8, 2015, 12:30 PM), https://www.cnn.com/2015/04/07/politics/how-russians-hacked-the-wh/index.html.

[5] Ellen Nakashima, *Russian government hackers penetrated DNC, stole opposition research on Trump*, The Washington Post (June 14, 2016), https://www.washingtonpost.com/world/national-security/russian-government-hackers-penetrated-dnc-stole-opposition-research-on-trump/2016/06/14/ef006cb4-316e-11e6-8ff7-7b6c1998b7a0_story.html.

5

researchers thoughtfully and thoroughly performed the research necessary to assess the nature of the alleged Trump/Alfa/Spectrum connection, and collaboratively shared their views about what the data showed or did not show. Although Mr. Joffe did not perform the aforementioned research,[6] he was included on communications about it, posed questions to the researchers, challenged their preliminary conclusions, and suggested additional areas of inquiry – just as any responsible scientist would in testing the hypothesis that was suggested by the data. Notably, the Indictment completely ignores the fact that scientific research necessarily involves a process of trial and error and instead attempts to present as conclusions isolated snapshots during that lengthy process. In the end, the researchers unanimously concluded that the data supported an inference that there was a covert communication channel of some kind and that this channel warranted further investigation.

- **Mr. Joffe did not engage Mr. Sussmann for political purposes.** On the contrary, Mr. Joffe had a pre-existing professional relationship with Mr. Sussmann, dating back to 2010, because Mr. Sussmann was a recognized expert in matters involving cybersecurity and related national security threats and privacy issues. After Mr. Joffe was contacted by the researchers about the DNS data reflecting the anomalous Trump/Alfa/Spectrum Health connection, he sought Mr. Sussmann's legal advice. At the time, Mr. Joffe was deeply concerned about the risk that he could become a target of Russian state actors or others, if the information was publicly disclosed and he was linked to the disclosure. This included concerns about his personal safety, as is corroborated by Mr. Joffe's request in October 2016 that Perkins Coie provide him with information regarding the requirements for obtaining a concealed firearms carry permit in the District of Columbia, and provide referrals to experts who could help increase the effectiveness of security systems at his personal residence.

- **Mr. Joffe did not have a political motive or coordinate with the Clinton Campaign.** Mr. Joffe was not employed or paid by the Clinton Campaign, nor did he ever personally meet with or discuss the researchers' concerns with campaign staff.[7] Moreover, Mr. Joffe was not offered a position in the Clinton Administration if candidate Clinton won the election and had no interest whatsoever in leaving the private sector.[8]

---

[6] Mr. Joffe is a globally acknowledged and respected DNS expert, but he lacks the specific expertise required to perform the kind of analysis that the researchers performed regarding the alleged Trump/Alfa/Spectrum connection and, later, the use of a Yota phone in proximity to locations associated with the Trump Organization.

[7] On one occasion, Mr. Joffe was introduced to three or four employees of Fusion GPS. Prior to that meeting, he had never heard of Fusion and had no idea of what they did. As a result of that meeting, Mr. Joffe understood that Fusion was an investigative firm, but he was never engaged by them, nor did he task them to do work on his behalf.

[8] The Indictment also alleges that Mr. Joffe wanted to "please certain 'VIPs'" Indictment ¶ 23, at 10, 12, and suggests that those VIPs were members of the Clinton Campaign. This leap, however, is not supported by the totality of the evidence. Instead, it is clear that Mr. Joffe and the researchers were focused on providing the researchers' analysis and supporting data to Government agencies or investigative journalists who were better positioned to further investigate the concerns that the researchers had raised. And, in fact this is precisely what happened.

6

As the OSC is aware, publicly available records reflect that Mr. Joffe has not made a political donation in two decades. During that time, he also has not voted. He has avoided politics for a number of reasons, including his long-standing relationship with various Government agencies in both his personal capacity and through companies with which he has been affiliated.[9] Finally, it is our understanding that the OSC has asked more than a dozen witnesses, including many of Mr. Joffe's friends and business associates, about his political views and none of those witnesses has described him as a partisan actor.

### B.     The OSC's Repeated Allegations of Wrongdoing by Mr. Joffe and Resultant Harm

Even assuming that the Special Counsel and his staff did not fully appreciate the harm that Mr. Joffe would suffer after the Indictment became public, their subsequent actions evince a complete disregard for Mr. Joffe's Constitutional rights, his safety, and the safety of his family. On February 11, 2022, with knowledge that its prior filings had spurred threats of violence against Mr. Joffe and his family, as well as other significant consequences, the OSC filed a Motion to Inquire Into Potential Conflicts of Interest (hereinafter cited as "Motion to Inquire at ___"). In that motion, the OSC gratuitously repeated and unnecessarily expanded upon its allegations of wrongdoing by Mr. Joffe, still a non-party, alleging that he:

- "exploited [his employer's] arrangement [with the Executive Office of the President] by mining the EOP's DNS traffic and other data for the purpose of gathering derogatory information about Donald Trump"; (Motion to Inquire at 3)

- improperly collected "purported DNS traffic . . . pertaining to Trump Tower, Donald Trump's New York City apartment building, the EOP, and [a] healthcare provider"; (*Id.* at 4) and

- "assembl[ed]" unsubstantiated allegations "Trump and/or his associates were using supposedly rare, Russian-made wireless phones in the vicinity of the White House and other locations." (*Id.*)

Aside from being wholly unnecessary to the OSC's motion, the allegations again are false and misleading, and ignore substantial exculpatory and contradictory evidence that the OSC long

---

[9] Mr. Joffe is also a past civilian recipient of the FBI Director's Award for assistance he provided in a massive cybersecurity investigation that resulted in dozens of arrests in various countries, including the United States.

7

has had in its possession. Mr. Joffe did not "mine" data pertaining to the EOP, Trump or his associates. On the contrary, he simply responded to a request from leading cybersecurity researchers to provide them with public DNS data regarding queries to and from websites connected with Russian-made Yota phones or devices.[10] Those researchers were and are employees of a customer of Mr. Joffe's former employer that had contracted to receive large amounts of public DNS data for analysis and identification of cyber-threats. As the OSC knows through interviews of various individuals, Mr. Joffe was fully authorized to provide the researchers with the requested data, and did not oversee any of the research or analysis that the researchers subsequently performed. Moreover, it was one of the researchers, not Mr. Joffe, who subsequently wrote a series of technical "white papers" setting forth his analysis of the data he had received, as well as his observations regarding the operation of a Yota phone he had purchased for observation in his lab. Because Mr. Joffe was not present at the February 9, 2017 meeting described in the Indictment and the OSC's Motion to Inquire, he does not know with certainty whether none, some or all of those white papers were provided to representatives of the Central Intelligence Agency (identified as "Agency-2" in the Indictment) on February 9, 2017. Nevertheless, it is Mr. Joffe's understanding that the white papers, which are in the possession of the OSC, simply convey the researchers' observations and analysis and suggest that further investigation by Government agencies is warranted due to legitimate national security concerns. Moreover, to the best of Mr. Joffe's knowledge, the white papers do not allege illegal activity by Trump or his associates.

---

[10] Yota phones are manufactured in Russia and do not work on U.S. cellular phone networks. Instead, they must connect to and operate over the Internet when in the U.S. and, therefore, leave DNS footprints. Because they do not operate over U.S. networks, Yota phones are rare in the U.S.

8

Predictably, in the days since the OSC filed its Motion to Inquire, Mr. Joffe again has become the subject of intense media coverage, much of which is inaccurate and misleading and, in some cases, includes assertions that go well beyond the allegations included in the OSC's filing. *See* Fox News, *Tucker: Trump was right about this*, Youtube (Feb. 14, 2022), https://www.youtube.com/watch?v=Hb-fQTm_fP0; Alexander Mallin and Jack Date, *Special counsel, Democratic lawyer clash over new allegations regarding data purported to tie Trump to Russia*, ABC News (Feb. 15, 2022, 1:19 PM), https://abcnews.go.com/Politics/special-counsel-democratic-lawyer-clash-allegations-data-purported/story?id=82902283; Tom Winter, *Tech exec used access to White House computers to look for dirt on Trump, says special counsel*, NBC News (Feb. 15, 2022, 11:23 PM), https://www.nbcnews.com/politics/justice-department/tech-exec-used-access-white-house-computers-look-dirt-trump-says-speci-rcna16123; NBC News, *Special Counsel Says Tech Executive Used White House Computers To Look For Dirt On Trump*, Youtube (Feb. 15, 2022), https://www.youtube.com/watch?v=YmKfaWNmIjU; Steven Nelson, *Psaki won't comment on Clinton-linked tech exec 'mining' WH records*, NY Post (Feb. 16, 2022 4:55 PM), https://nypost.com/2022/02/16/psaki-wont-comment-on-clinton-linked-tech-exec-mining-wh-records/.

At the same time, Mr. Joffe and his family have been the target of an ever greater avalanche of threats, including death threats, and he has suffered even more reputational and financial harm and emotional distress than he did after the return of the Indictment. Among other things, he and his family have been the victims of the following egregious acts:

- The former President of the United States issued a public statement that in stronger times in our country's past, the actions of Mr. Joffe and others would have been "punishable by death"; *See* Alia Shoaib, *Trump claims allegations that Clinton operatives tried to infiltrate Trump Tower, White House servers are crimes that 'would have been punishable by death*, Insider (Feb. 12, 2022) (posting Statement of Donald J. Trump),

9

https://www.businessinsider.com/trump-clinton-operatives-alleged-infiltration-once-punishable-by-death-2022-2.

- Dozens of tweets calling for Mr. Joffe's execution, many of which were retweeted many times, have been posted on Twitter (screenshots of four examples of these Tweets are attached as **Exhibit B**);[11]

- Mr. Joffe received numerous harassing telephone messages from anonymous callers (which he has recorded and can share with the Court);

- On three separate occasions since the OSC filed its Motion to Inquire, a strange man or men knocked on Mr. Joffe's door, prompting him to call the local police on one of those occasions (a redacted copy of the police report is attached as **Exhibit C**); and

- On several occasions, when members of Mr. Joffe's family have left the home to drive to another location, they have been followed, including an incident where two men in separate vehicles followed Mr. Joffe's daughter and a juvenile family member.

As a result of the threats that started soon after the return of the Indictment and continue to this day, Mr. Joffe has been forced to engage private security for himself and his family, likely spending tens of thousands of dollars for protection. Mr. Joffe also has suffered significant professional and reputational harm. For example, during this past week, he was asked to step down from the boards of two companies he served on, as well as advisory boards for two other companies.

In its latest filing, the OSC disclaims any responsibility for the firestorm it has stoked, stating: "If third parties or members of the media have overstated, understated, or otherwise misinterpreted facts contained in the Government's Motion, that does not in any way undermine the valid reasons for the Government's inclusion of this information." Government's Response to the Defendant's Cross-Motion to Strike (Feb. 17, 2022), at 1-2. The OSC's refusal to accept responsibility for the direct consequences of its actions, and its suggestion that there are "valid

---

[11] Mr. Joffe has contacted Twitter and they have deleted the tweets calling for his execution and, due to the extraordinary number of threatening tweets, have undertaken on their own initiative a proactive process of deleting tweets threatening Mr. Joffe as the tweets appear. Mr. Joffe also has reported the threats to law enforcement.

10

reasons" for violating the Constitutional rights of a non-party, are extremely troubling. It simply cannot be disputed that there is a cause and effect relationship between the OSC's attacks against Mr. Joffe and the ensuing threats against him and his family, as well as the reputational, financial and emotional harm he and his family have suffered. Mr. Joffe therefore asks that this Court take action to (1) remedy, insofar as that is possible, the damage that already has been done, and (2) prevent further harm to him and his family.[12]

## ARGUMENT

In the Indictment, and a number of subsequent pretrial filings, the OSC has directly and unequivocally accused Mr. Joffe of various forms of wrongdoing. Because Mr. Joffe is not a party to these proceedings, however, he has not been afforded a forum to challenge the accusations against him. Under similar circumstances, numerous courts, including a court in this district, have recognized that this type of action by the Government infringes upon an individual's right to due process of law under the Fifth Amendment and ignores the presumption of innocence, one of the bulwarks of our Constitutional system of justice. *See In re Smith*, 656 F.2d 1101 (5th Cir. 1981); *United States v. Chadwick*, 556 F.2d 450 (9th Cir. 1977); *United States v. Anderson*, 55 F. Supp.2d 1163 (D. Kan. 1999).[13] We urge this Court to do the same.

In *Smith*, the Fifth Circuit held that the U.S. Attorney's Office had violated the Fifth Amendment liberty and property rights of the petitioner, an uncharged individual, by publicly naming him as a recipient of bribes in its "resume" setting forth the factual basis for guilty pleas

---

[12] The OSC's willingness to make future filings under seal to protect the privacy interests of others is simply too little too late, although it does represent an admission that its actions have resulted in serious consequences for others, including Mr. Joffe.

[13] *See generally United States v. Steinger*, 626 F. Supp.2d 1231, 1237 (S.D. Fla. 2009) (denying newspapers' motion to unseal various materials referencing uncharged subjects of corruption investigation and recognizing that those individuals "do not have a forum in which to defend themselves, and their careers and reputations could suffer fatal blows if the details of the grand jury investigation were to become public.").

11

of two corporate defendants. In reaching this conclusion, the court recognized that "no legitimate governmental interest is served by an official public smear of an individual when that individual has not been provided a forum in which to vindicate his rights." *Id.* at 1106. Moreover, it observed that "[t]he presumption of innocence . . . was forgotten by the Assistant United States Attorney in drafting and reading aloud in open court the factual resumes which implicated the Petitioner in criminal conduct without affording him a forum for vindication." *Id.* at 1107. Accordingly, based on the DOJ's violation of the petitioner's rights, the court ordered that all references to him in the Government's filing should be stricken from the court's file and all pleadings relating to his request for relief should be sealed. *Id.*

Similarly, in *Anderson*, the court found that the U.S. Attorney's Office had violated the Fifth Amendment due process rights of three uncharged, well-known healthcare attorneys when it publicly named them as unindicted co-conspirators in a pretrial motion regarding, among other things, a potential conflict of interest involving counsel for two charged defendants.[14] *Anderson*, 55 F. Supp.2d at 1165, 1168. After the attorneys were identified as alleged wrongdoers, it "was notoriously reported in the legal and healthcare community." *Id.* at 1166. In finding that the DOJ had violated the attorneys' rights by impugning their reputations and not providing a forum in which they could vindicate themselves, the court aptly observed: "After carefully reviewing the government's moving papers on the conflict of interest issue, the court can find no reason why the government might have 'forgotten' the presumption of innocence in such a public pleading." *Id.* at 1168 (citing *Smith*, 656 F.2d at 1107). Consequently, based on the

---

[14] Notably, the court stated that "the government's unqualified identification of the movants as unindicted coconspirators in its *pretrial moving papers* allows for the reasonable inference that they have been labeled criminals. The movants suffered a due process violation." *Id.* at 1169-70 (emphasis added). In this case, even though no conspiracy is charged, the OSC has repeatedly accused Mr. Joffe of wrongdoing, in the Indictment and in various pretrial filings, effectively labeling him a criminal.

12

Government's violation of the attorneys' Constitutional rights, the court ordered that (1) the offending pretrial pleading be sealed until the court's order became final; and (2) once the order became final, the court directed that the pleading could be unsealed, but the attorneys' names were ordered stricken from the filing.

In *United States v. Korean Airlines Co.*, 505 F. Supp.2d 91, 93 (D.D.C. 2007), another judge of this court favorably cited *Smith* and *Anderson*, as well as the fundamental principles articulated in those cases. Specifically, the court stated:

> The Due Process Clause of the Fifth Amendment protects an individual from governmental accusations of criminal misconduct without providing a proper forum for vindication. . . . The more typical case involves an aggrieved person seeking to expunge an indictment revealing his identity as an unindicted coconspirator; courts have generally found such disclosures to violate the due process rights of the person revealed. . . . However, the due process protection is not limited to accusations against the uncharged in an indictment, but rather extends to other criminal accusations made by a government attorney, including accusations in factual proffers and other court memoranda. . . .

*Id.* at 93-94 (citations and footnote omitted). The court also noted that, in that case, "[t]he government does not take issue with this basic principle —indeed, its primary case acknowledges this principle as correct."[15] *Id.* at 94. Although the court found that the rights of the movants in *Korean Airlines* had not been violated, the facts are clearly distinguishable from the instant case and the basic principles embraced by that court support Mr. Joffe's claims here.

In *Korean Airlines*, the information charging the airline with two counts of conspiracy to violate antitrust laws did "not identify any unindicted co-conspirators by name" or provide any "indicia as to the identity of the co-conspirators." *Id.* In stark contrast, the Indictment in this matter provides a sufficiently detailed description of Mr. Joffe and his alleged actions that enabled others to identify him within a matter of days, and included detailed allegations of

---

[15] Presumably, the OSC would agree that in this matter, Mr. Joffe also has rights.

wrongdoing by him, and his identity and the allegations were and continue to be "notoriously reported" by the media. In *Korean Airlines*, unlike here, the airline's plea agreement and related DOJ press release did not identify the movants or include any recitations that would suggest potential criminal liability. The plea agreement merely stated that the movants were "excluded from the cooperation and nonprosecution provisions of the agreement, without explaining the basis for the exclusion." *Id.* Moreover, the court there found that there could be reasons, other than criminal wrongdoing, why the movants were "carved out" from the Plea Agreement. *Id.* at 95. In this case, on the other hand, the OSC's inclusion of extensive allegations of wrongdoing by Mr. Joffe in the Indictment and pretrial filings, including the Motion to Inquire,[16] serves no purpose but to depict him as a participant in a criminal venture and to provide the OSC with license to continue to publicly accuse Mr. Joffe, including in any report that it issues.[17]

The OSC's actions and resultant violations of Mr. Joffe's Fifth Amendment rights also constitute violations of long-standing DOJ policy. In that regard, Section 9-27.760 of the Justice Manual requires that all federal prosecutors "remain sensitive to the privacy and reputational interests of uncharged third-parties" in all public filings and proceedings, noting that absent significant justification it is not appropriate to identify an uncharged party "either by name or *unnecessarily-specific description*." (emphasis added). In this matter, the OSC's "unnecessarily-specific description" of Mr. Joffe, detailed description of his alleged actions, and speculation concerning his motives were neither necessary nor appropriate. Accordingly, based on the

---

[16] On October 20, 2021, the OSC filed its Opposition to Defendant's Motion for a Bill of Particulars, in which it repeated the substance of the Indictment's allegations against Mr. Joffe.

[17] We note that the public allegations the OSC has made against Mr. Joffe undoubtedly would have been subject to grand jury secrecy requirements and would not have been disclosed, including in any report the OSC issues, but for their inclusion in the Indictment and the OSC's pretrial filings. While this represents a clever tactic for evading the requirements of Rule 6(e), prosecutors should follow the rules, not find clever ways to evade them.

OSC's violation of Mr. Joffe's rights and disregard for DOJ policy, we have sent a letter to the Attorney General asking that Special Counsel Durham and members of his staff be removed and replaced pursuant to 28 C.F.R. §§ 600.1 to 600.10, the regulations governing the appointment, powers and authority, conduct, and termination of a special counsel. See 28 C.F.R. § 600.7 (a Special Counsel and his staff must "comply with the rules, regulations, procedures, practices and policies of the Department of Justice," and may be removed based on misconduct and "for other good cause, including violation of Departmental policies."). A copy of the letter is attached as **Exhibit D**.

In sum, the OSC's allegations of wrongdoing by Mr. Joffe, in the Indictment and pretrial filings, including the Motion to Inquire, plainly implicate his rights under the Fifth Amendment, and the substantial harm he and his family have suffered provide him with standing to raise these issues before the Court.[18] The fact that he has not been identified as a co-conspirator or that the OSC's allegations do not reference a specific criminal violation does not diminish the harm he and his family have suffered or his right to seek redress. *See, e.g., Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971) (holding that Wisconsin statute authorizing police to post a notice in liquor stores prohibiting sales to a person who allegedly has engaged in misconduct when intoxicated violated the due process clause insofar as it failed to provide notice and an opportunity to be heard).[19] Indeed, if anything, it makes the actions of the OSC, in naming Mr. Joffe and disseminating extensive allegations of wrongdoing, even more egregious.

---

[18] In *Smith*, *Anderson*, and *Korean Airlines Co.*, the courts recognized that the intervenors had standing to assert their claims, even if a specific rule did not address intervention, because all of the intervenors had suffered some injury as a result of the Government's actions.

[19] As the Court in *Constantineau* noted, it is axiomatic that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Id.* at 437.

15

For similar reasons, the OSC should not be permitted to hide behind the fiction that because they have used a pseudonym in the Indictment and pretrial filings, they have not identified Mr. Joffe . The avalanche of reporting concerning Mr. Joffe demonstrates that the OSC described him with sufficient particularity in the Indictment and subsequent filings that his identity would and did become widely known within days. Moreover, after learning that Mr. Joffe unquestionably had been identified, notoriously depicted in the media, and subjected to threats of violence and intimidation, the OSC persisted in sullying Mr. Joffe's reputation and disseminating allegations that they knew would incite others to threaten and intimidate him and his family.[20] Under these circumstances, the OSC should be held accountable for its actions and directed to refrain from future actions that would unlawfully harm Mr. Joffe and his family.

---

[20] It also is difficult to imagine that the OSC did not recognize that the allegations in its Motion to Inquire would not prompt the former President of the United States, who regularly has commented on the work of the OSC, to make statements that inevitably would embolden certain of his followers to threaten and intimidate Mr. Joffe and his family.

16

**CONCLUSION**

Based on the foregoing, Mr. Joffe respectfully requests that this Court enter an Order granting this motion to intervene and to expunge all references to Tech Executive-1 from the Court's file. Mr. Joffe also requests that the Court enter an order prohibiting the parties from making any further public allegations of wrongdoing by Tech Executive-1, including in any report regarding the grand jury's investigation, sealing this motion and the attached exhibits, and granting Mr. Joffe such other relief as may be necessary and appropriate to remedy the OSC's intentional violation of his Constitutional rights.

Dated: February 23, 2022                    Respectfully submitted,

*/s/ Steven A. Tyrrell*
Steven A. Tyrrell (D.C. Bar No. 998795)
Eileen Hren Citron (Bar No. 995117)
WEIL, GOTSHAL & MANGES, LLP
2001 M Street, N.W., Suite 600
Washington, D.C. 20036
Tel: (202) 682-7000
Fax: (202) 857-0940
steven.tyrrell@weil.com
eileen.citron@weil.com

*Counsel for Proposed Intervenor*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 23, 2022, I caused the foregoing to be filed and served via electronic mail upon all counsel of record:

Michael Bosworth
Latham & Watkins LLP
1271 Avenue of the Americas
New York, NY 10020
michael.bosworth@lw.com

Sean M. Berkowitz
Latham & Watkins LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
sean.berkowitz@lw.com

Catherine Yao
Natalie Hardwick Rao
Latham & Watkins LLP
555 11th Street, NW, Suite 1000
Washington, DC 20004
catherine.yao@lw.com
natalie.rao@lw.com

Andrew DeFilippis
Special Counsel's Office
145 N Street, NE
Washington, DC 20002
andrew.defilippis@usdoj.gov

Michael T. Keilty
Jonathan Edgar Algor, IV
DOJ-USAO
145 N Street, NE, Suite 3E 803
Washington, DC 20530
michael.keilty@usdoj.gov
jonathan.algor@usdoj.gov

Deborah Brittain Shaw
U.S. Department of Justice
Fraud Section, Securities & Financial Fraud
1400 New York Avenue, NW
Washington, DC 20005
brittain.shaw@usdoj.gov

/s/ *Steven A. Tyrrell*
Steven A. Tyrrell