IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| In re: SEALED MOTION. | Misc. Case No. 1:22mc-00021 (CRC)<br><br>(FILED UNDER SEAL) |

**RODNEY JOFFE'S REPLY MEMORANDUM IN SUPPORT
OF MOTION TO INTERVENE AND TO EXPUNGE REFERENCES
TO TECH EXECUTIVE-1 BASED ON CONSTITUTIONAL VIOLATIONS
AND SUPPORTING MEMORANDUM**

Rodney Joffe, by and through his undersigned counsel, hereby submits this reply memorandum in support of his Motion to Intervene and Expunge References to Tech Executive-1 in the Court's file in *United States v. Sussmann*, Criminal Case No. 21-582 (CRC). As set forth below, the Office of Special Counsel's ("OSC") opposition to Mr. Joffe's motion (cited herein as "OSC Opp. at __") ignores the reality of the circumstances it has precipitated and, like its past filings referencing Mr. Joffe, is premised on incomplete and misleading factual assertions. The opposition also fails to address the devastating effect that the OSC's unnecessary and reckless actions have had on Mr. Joffe and his family, and grossly underestimates this Court's ability to remedy the OSC's past wrongs and prevent future harm, while still ensuring reasonable public access to matters relevant to the *Sussmann* case. For these and the reasons

previously set forth in Mr. Joffe's Motion, we respectfully submit that the Motion should be granted.

**ARGUMENT**

In its opposition, the OSC does not dispute the axiom that an individual's Constitutional rights are implicated where the government makes an accusation of criminal wrongdoing and fails to afford the accused an opportunity to respond. *See In re Smith*, 656 F.2d 1101 (5th Cir. 1981); *United States v. Chadwick*, 556 F.2d 450 (9th Cir. 1977); *United States v. Anderson*, 55 F. Supp.2d 1163 (D. Kan. 1999). The OSC fails to recognize, however, that the protection of an individual's due process rights is not limited to allegations of criminal wrongdoing. In that regard, the Supreme Court has held that this protection extends to other circumstances "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him . . . ." *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971) (holding that Wisconsin statute authorizing police to post a notice in liquor stores prohibiting sales to a person who allegedly has engaged in misconduct when intoxicated violated the due process clause insofar as it failed to provide notice and an opportunity to be heard). This is precisely the case here where the OSC has directly and unequivocally accused Mr. Joffe of wrongdoing and caused him and his family substantial harm, even though the OSC now acknowledges that that Mr. Joffe did not commit a crime.

Notwithstanding the foregoing, the OSC relies on *In re Interested Party 1*, 530 F. Supp. 2d 136, 144 (D.D.C. 2008), and *Paul v. Davis*, 424 U.S. 693, 707-09 (1976), to argue that "[s]tigma, 'standing alone' does not implicate due process." Neither of those cases control here, however, because Mr. Joffe does not base his request for relief on mere reputational harm alone. Rather, consistent with *In re Smith*, 656 F.2d 1101 (5th Cir. 1981) – notably decided after *Paul*

2

and repeatedly relied upon by other courts – Mr. Joffe holds a protected due process interest in being free "from governmental accusations of criminal misconduct without" being afforded "a proper forum for vindication." *United States v. Korean Air Lines, Ltd.*, 505 F. Supp. 2d 91, 93 (D.D.C. 2007) (citing *Smith*, 656 F.2d at 1106-07).  Unlike the plaintiff in *Paul*, who had been arrested and provided a forum to contest his charge, Mr. Joffe has no available forum to challenge the OSC's actions, thereby depriving him of any opportunity to be heard.  *See Application of Jordan,* 439 F. Supp. 199, 208-09 (S.D. W.Va. 1977) (distinguishing *Paul* because the situation "differs from *Paul v. Davis* in that there is available to the petitioner no other form or forum by which he may challenge the actions" and holding that petitioner was denied due process rights).  Indeed, this District has previously recognized that "courts generally have found" disclosures revealing the identity of unindicted co-conspirators and making criminal "accusations against the uncharged" "to violate the due process rights of the person revealed." *Doe v. Hammond*, 502 F. Supp. 2d 94, 102 (D.D.C. 2007) (citing, *inter alia*, *United States v. Briggs*, 514 F.2d 794, 802-06 (5th Cir. 1975), and *Smith*, 656 F.2d at 1106)).  Moreover, unlike the individuals in *Paul* and *Interested Party*, Mr. Joffe also has suffered financial loss, including the cost of private security and the loss of positions on two company boards and two additional advisory boards, as a result of the OSC's actions.  *See* Motion at 10; *Masvidal v. U.S. Dep't of Justice*, 716 F. Supp. 2d 1207, 1212 (S.D. Fla. 2010) ("[W]hen considering that Masvidal has alleged that his reputation was damaged in conjunction with the DOJ's interference with his private employment the Court is persuaded that Masvidal has adequately alleged a constitutionally-protected interest.") (citing *Paul*, *Briggs*, and *Smith*).  For these reasons, the OSC's actions implicate Mr. Joffe's due process rights and his motion presents an appropriate case for the granting of relief.

A.    **The OSC Repeatedly Has Alleged That Mr. Joffe Engaged in Serious Wrongdoing, Knowing That He Has no Forum in Which He Can Challenge The Allegations.**

The OSC's claim that it has not accused Mr. Joffe of wrongdoing is flatly contradicted by the indictment and several of its other filings in the *Sussmann* case.[1] In those documents, the OSC alleges that Mr. Joffe engaged in a series of wrongful acts, including (1) "exploiting" his access to "non-public data" to conduct "opposition research" regarding candidate Trump; (2) knowingly "coordinating" his actions "with representatives and agents of the Clinton Campaign" suggesting that his actions were infected with a partisan motive; (3) "creating" a "narrative" regarding Trump's ties to Russia based on a "political or business agenda"; (4) using his supposed status as "a powerful figure," to place pressure on the researchers to perform research and reach a specific conclusion; and (5) selectively disclosing elements of the researchers' work to the government, rather than presenting a complete picture. Considering these allegations, it is mind-boggling that the OSC would take the position that these are not allegations of wrongdoing by Mr. Joffe. It is plain they are.

It also is clear that Mr. Joffe has not been provided with a forum where he can challenge the OSC's allegations, and he and his family have been concretely harmed, not merely stigmatized, by them, as we described in our initial motion memorandum. Notably, the OSC does not address Mr. Joffe's assertions about the effect of these allegations on him and his family, although the OSC refuses to accept any responsibility for the results of its actions. Instead, they argue that "stigma" alone is not sufficient to sustain a claim for violation of an individual's right to due process. In this case, however, the harm goes beyond mere "stigma" and involves direct and substantial financial loss to Mr. Joffe, which Mr. Joffe can support with

---

[1] This includes the OSC's Opposition to Defendant's Motion for a Bill of Particulars, Docket Entry 19 (Oct. 20, 2021), and the OSC's Motion to Inquire Into Potential Conflicts of Interest, Docket Entry 35 (Feb. 11, 2022) (the "Motion to Inquire").

4

evidence if the Court provides him with an opportunity to do so, as well as significant emotional distress associated with the threats and harassment that Mr. Joffe and his family have endured.

**B.    The OSC's Detailed Description of Mr. Joffe and His Alleged Actions Impelled His identification and Directly Caused Harm to Him and His Family.**

Predictably, the OSC also attempts to hide behind the fiction that because it has not identified Mr. Joffe by name in the indictment or subsequent filings, the OSC acted appropriately and Mr. Joffe has no recourse.  The OSC also attempts to argue that because Mr. Joffe first issued a public statement, this Court should not hold it accountable for the way it portrayed Mr. Joffe, tarring him with allegations of wrongdoing and exposing him and his family to threats of violence and harassment.  Again, however, the OSC ignores the stark reality of what its actions have wrought.  Its argument, moreover, elevates form over substance and ignores the mountain of evidence that the OSC, in the indictment and subsequent filings, did identify Mr. Joffe with sufficient particularity that his identity was widely reported within days of the return of the indictment.

In the real world, not the world by the OSC's opposition, this is what transpired:

- On September 14, 2021, two days before the indictment was returned, a reporter for The New York Times contacted Mr. Joffe directly (see Exhibit A).

- On September 15, 2021, a day before the indictment was returned, The New York Times, which apparently had been tipped that the OSC would be presenting an indictment the next day, ran a story titled, *Durham Is Said to Seek Indictment of Lawyer at Firm with Democratic Ties* (see Exhibit B).[2]  As the article reflects, when confronted with the fact that the article would name Mr. Joffe, undersigned counsel provided a brief statement for the record "on the condition that The New York Times not name [Mr. Joffe] in th[e] article, citing a fear of harassment . . . ."

- Commencing as early as September 15, 2021, Twitter was ablaze with tweets identifying Mr. Joffe as Tech Executive-1.  To demonstrate that fact, we have prepared and attached a 28-page spreadsheet reflecting 244 tweets and other mentions of Mr. Joffe between

---

[2] Rule 6(e)(2) of the Federal Rules of Criminal Procedure imposes on obligation of secrecy on various individuals regarding matters occurring before the grand jury.  Notwithstanding this requirement, it appears that someone told The New York Times that an indictment would be presented on September 16, 2021.

5

- September 15 and September 30, 2021, including by individuals with tens of thousands of followers (see Exhibit C). This spreadsheet does not include the thousands of retweets of these tweets and mentions which exponentially expanded the identification of Mr. Joffe as Tech Executive-1.

- On September 16, 2021, the day the indictment was returned, undersigned counsel received an email from a Bloomberg reporter stating, among other things: I understand that your client, who is referred in the indictment as Tech Executive-1, is Rodney Joffe . . . ." (see Exhibit D).

- One day later, after receiving a polite "no comment" response from undersigned counsel, the same reporter emailed again, stating: "I'm writing again to say that we are preparing to report that Rodney Joffe is the person referred to as Tech Executive-1 in the Michael Sussmann indictment. Do you have a comment about that . . . ." (see Exhibit E). Undersigned counsel again provided no comment.

- On or about September 30, 2021, when confronted with the reality that Mr. Joffe had been widely identified as Tech Executive-1 and would be identified in an upcoming article in The New York Times, undersigned counsel provided another brief statement for the record. (See Exhibit F)

This chronology of events immediately before and after the return of the indictment vividly demonstrates that Mr. Joffe was identified as a direct result of the nearly 70 times Mr. Joffe is mentioned in the indictment, including details of his employment, legal and professional affiliations, and communications with others, the overwhelming majority of which were wholly unnecessary or could have been presented in a far less specific way. Mr. Joffe was not identified because he decided that, after weeks of being the subject of false and misleading allegations and harassment, and knowing that he had been identified, he would make a brief statement for the record defending himself and his actions.

The OSC also fails to respond to the fact that after undersigned counsel sent them a lengthy letter on October 27, 2021, detailing our concerns about the indictment's false, misleading, and unnecessary allegations against Mr. Joffe, and notifying them of the threats and harassment that those allegations had caused Mr. Joffe and his family, the OSC escalated its attack by including more unnecessary, false and misleading allegations in its Motion to Inquire.


At that point, the OSC unquestionably knew that the identity of Tech Executive-1 had been widely reported and any expansion of the allegations against him – like those that the OSC included in the Motion to Inquire – would fuel further threats and harassment against Mr. Joffe and his family, which it did.  Indeed, the filing produced such a vitriolic and distorted reaction, including in mainstream media reports, that the OSC feebly attempted to distance itself from and deny responsibility for the byproduct of its actions.[3]

Notwithstanding this fact, in an attempt to justify its actions, the OSC points to other recent "high-profile" prosecutions where individuals were identified by pseudonyms and their identity became a matter of public interest.  Those cases, however, are easily distinguished from the instant case.  First, many of them involved public figures, including "a political commentator who worked with an online media publication", "a radio host", a "Former Congressman", a "Reporter", and "Individual 1" (former President Trump).  Moreover, none of those matters involved allegations of wrongdoing by the unnamed individuals as stark, specific and detailed as those relating to Mr. Joffe in the indictment against Mr. Sussmann.  Finally, the mere fact that other individuals have chosen not to challenge the government's practice of identifying uncharged individuals in other indictments in a way that made their identities a foregone conclusion does not mean that the practice is lawful or acceptable.  Thus, the OSC's reliance on those cases is misplaced.[4]

---

[3] See the OSC's Response to the Defendant's Cross-Motion to Strike, Docket Entry 40 (Feb. 17, 2022) at 1-2 (acknowledging the possibility that "third parties or members of the media [may] have overstated, understated, or otherwise misinterpreted facts contained in the Government's Motion . . . .").

[4] The OSC also argues that because Mr. Joffe "thrust" these matters into the public domain in 2016, he cannot claim a Constitutional violation now.  As the OSC well knows, however, Mr. Joffe never "thrust" himself into the public domain.  On the contrary, he was not publicly identified as Mr. Sussmann's client or as a source for any media reporting about the alleged Trump/Alfa/Spectrum connection until the OSC effectively disclosed his identity in the indictment.

C. **The OSC Has Persisted and Will Persist in Harming Mr. Joffe Absent Relief From This Court.**

The OSC's opposition also provides yet another example of its penchant for impugning Mr. Joffe by presenting and characterizing pieces of evidence in support of its narrative, while intentionally omitting other more probative evidence that directly contradicts its theory. In doing so, the OSC blithely states that it "does not wish to engage in a detailed factual debate over these matters here . . . ." OSC Opp. At 10. Ironically, that statement highlights the nature of the grievous wrong that has been perpetrated upon Mr. Joffe and the fact that he has no forum in which to seek relief, and therefore, the critical importance of this Court taking action.

As an example, it its opposition, the OSC quotes email exchanges between the researchers and Mr. Joffe where the words "task," "narrative," and "inference" are used. Based on the phrasing of the emails, the OSC has alleged in the indictment and other filings that Mr. Joffe was directing the researchers and asking that they reach a specific conclusion without regard to what the data suggested. Indeed, we understand that the OSC has repeatedly asked the researchers questions aimed at supporting this theory, including whether the researchers' investigation of DNS data suggesting the possibility of further Russian cyber aggression aimed at the 2016 election cycle, was a "Joffe-drive endeavor."[5] The complete facts paint a very different picture.

First and foremost, despite the OSC's repeated prodding of and threats of prosecution for obstruction of justice or making false statements against the researchers, we understand that all three of the researchers have advised the OSC that Mr. Joffe did not task or direct them, nor did he pressure them to reach a specific conclusion. Indeed, the evidence is undisputed that the

---
[5] As we noted in our initial motion and memorandum, but it bears repeating here, the researchers' work was undertaken in the wake of reports of Russian hacks of the White House and the DNC.

8

researchers discovered the concerning data and came to Mr. Joffe, not that he tasked them to find the data in the first place.  Moreover, Mr. Joffe's employer was actually a supplier of DNS data for two of the researchers.  Thus, they were his customers and he effectively "worked for them," not the other way around.  The third researcher was employed by a different company that had a license to access DNS data lawfully acquired and owned by another company in which Mr. Joffe holds a minority ownership interest.  The third researcher, like the other two, also did not report to Mr. Joffe.  Finally, it is noteworthy that the OSC did not highlight the fact that when Mr. Joffe communicated with the researchers in one of the emails the OSC quotes, he did not ask or direct that they falsify or manipulate their research or findings.  He used the words, "a **true** story that could be used as a basis for **closer examination**."  OSC Opp. at 10 (emphasis added).  In short, the Court should put an end to the OSC's efforts to impugn Mr. Joffe by unnecessarily disclosing in public filings cherry-picked phrases from emails, taken out of context and contradicted by witness statements in the possession of the OSC.[6]

---

[6] Mr. Joffe understands that evidence regarding the indictment's allegations, including those that mention him will be presented at trial (unless excluded based on a motion in limine).  Mr. Joffe also appreciates and respects that the Court will rule on the admissibility of the evidence and that certain matters that have generated threats and harassment against him and his family may again be aired in public. At this point, Mr. Joffe simply seeks relief from the public filing of allegations against him before and, depending on the Court's rulings on the admissibility of the evidence, after trial.

## CONCLUSION

Based on the foregoing, Mr. Joffe respectfully requests that this Court enter an Order granting this motion to intervene and to expunge all references to Tech Executive-1 from the Court's file in the *Sussmann* case. Mr. Joffe also requests that the Court enter an order prohibiting the parties in that case from making any further public allegations of wrongdoing by Tech Executive-1, including in any report regarding the grand jury's investigation, unless and until the Court has ruled that such evidence is admissible at trial in the *Sussmann* case. Finally, Mr. Joffe requests that his motion and the attached exhibits, as well as all related submissions, be filed under seal until further order of the Court and that the Court grant such other relief as may be necessary and appropriate to remedy the OSC's intentional violation of his Constitutional rights.

Dated: March 10, 2022                                                                 Respectfully submitted,


                                                                   */s/ Steven A. Tyrrell*
                                                           Steven A. Tyrrell (D.C. Bar No. 998795)
                                                           Eileen Hren Citron (Bar No. 995117)
                                                           WEIL, GOTSHAL & MANGES, LLP
                                                           2001 M Street, N.W., Suite 600
                                                           Washington, D.C. 20036
                                                           Tel: (202) 682-7000
                                                           Fax: (202) 857-0940
                                                           steven.tyrrell@weil.com
                                                           eileen.citron@weil.com

                                                           *Counsel for Proposed Intervenor*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 10, 2022, I caused the foregoing to be filed and served via electronic mail upon all counsel of record:

Michael Bosworth
Latham & Watkins LLP
1271 Avenue of the Americas
New York, NY 10020
michael.bosworth@lw.com

Sean M. Berkowitz
Latham & Watkins LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
sean.berkowitz@lw.com

Catherine Yao
Natalie Hardwick Rao
Latham & Watkins LLP
555 11th Street, NW, Suite 1000
Washington, DC 20004
catherine.yao@lw.com
natalie.rao@lw.com

Andrew DeFilippis
Special Counsel's Office
145 N Street, NE
Washington, DC 20002
andrew.defilippis@usdoj.gov

Michael T. Keilty
Jonathan Edgar Algor, IV
DOJ-USAO
145 N Street, NE, Suite 3E 803
Washington, DC 20530
michael.keilty@usdoj.gov
jonathan.algor@usdoj.gov

Deborah Brittain Shaw
U.S. Department of Justice
Fraud Section, Securities & Financial Fraud
1400 New York Avenue, NW
Washington, DC 20005
brittain.shaw@usdoj.gov

*/s/ Steven A. Tyrrell*
Steven A. Tyrrell